IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RYAN F.,[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 3:25-cv-01535-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Ryan F. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record.

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in October 1980, making him thirty-seven years old on January 15, 2018, his alleged disability onset date. (Tr. 60, 73, 648.) Plaintiff is a high school graduate who has no past relevant work experience. (*Id.* at 206, 631, 667-68.) In his DIB application, Plaintiff alleges disability due to glaucoma, "legal blindness," and headaches. (*Id.* at 61, 74, 205, 663-64.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on November 19, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 13.) On August 11, 2021, Plaintiff and an impartial vocational expert ("VE") testified at a telephonic hearing before an ALJ. (*Id.* at 13, 29-58, 823-52.) On September 22, 2021, the ALJ issued a decision denying Plaintiff's application. (*Id.* at 13-23.) The Appeals Council denied Plaintiff's request for review on August 10, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff then sought judicial review of that decision.

On March 14, 2024, a judge from this district issued an Opinion and Order reversing the Commissioner's decision and remanding Plaintiff's case for further proceedings. (*Id.* at 710-23.) The district court entered judgment that same day and the Appeals Council's remand order followed on June 27, 2024. (*Id.* at 724-29.) Later that year, on December 10, 2024, Plaintiff, a VE, and an impartial medical expert, W. Benton Boone, M.D. ("Dr. Boone"), testified at a second hearing before a new ALJ. (*Id.* at 643-72.) The new ALJ issued a decision on April 14, 2025, denying Plaintiff's DIB application. (*Id.* at 619-33.) Plaintiff requested and received an extension of time in which to appeal and then filed the present action in federal court. (*Id.* at 614-15.)

///

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

///

## III. THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff is disabled. (Tr. 619-33.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2018, his alleged disability onset date. (*Id.* at 621.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "[V]isual impairment including congenital cataracts, glaucoma, optic neuropathy, hypermetropia, astigmatism, and presbyopia; migraine headaches; [and] bilateral hernias[.]" (*Id.* at 622.) At step three, the ALJ determined that Plaintiff did not have an impairment that met or equaled a listed impairment. (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to the following limitations: (1) Plaintiff can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs but never climb ladders, ropes, or scaffolds, (2) Plaintiff can occasionally read and "perform jobs requiring occasional near acuity, frequent far acuity, frequent accommodation, frequent field of vision, and occasional depth perception," and (3) Plaintiff cannot be exposed to hazards, such as "moving mechanical parts, unprotected heights, [and] operating a motor vehicle." (*Id.* at 623.) At step four, the ALJ found that Plaintiff has no past relevant work experience. (*Id.* at 631.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a sales attendant, tap room attendant, and housekeeping cleaner. (*Id.* at 632.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in two principal ways. (Pl.'s Opening Br. at 8, ECF No. 9; Def.'s Br. at 2, ECF No. 12; Pl.'s Reply Br. at 2, 5, ECF No. 13.) First, Plaintiff argues that the ALJ failed to provide a legally sufficient explanation for discounting the

opinion of his consultative ophthalmologist, Jordon Lubahn, M.D. ("Dr. Lubahn"). (Pl.'s Opening Br. at 8-13.) Second, Plaintiff argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting his symptom testimony. (*Id.* at 13-16.)

The Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. The Court therefore affirms the Commissioner's decision.

## I. MEDICAL OPINION EVIDENCE

### A. Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[2] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most

---

[2] Considering that Plaintiff filed his applications for benefits on February 7, 2019 (Tr. 13), the parties agree the revised regulations apply here. (*See* Pl.'s Opening Br. at 8; Def.'s Br. at 4.)

important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an ALJ concludes that "two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

### B. Analysis

Plaintiff argues that substantial evidence does not support the ALJ's discounting of Dr. Lubahn's opinion. (Pl.'s Opening Br. at 8-13; Pl.'s Reply Br. at 2-4.)

#### 1. Dr. Lubahn's Opinion

On August 25, 2020, Disability Determination Services ("DDS") referred Plaintiff to Dr. Lubahn for a consultative ophthalmological exam. (Tr. 468-85.) Dr. Lubahn noted that Plaintiff first received treatment at the age of two for congenital cataracts in both eyes, he underwent a right eye trabeculectomy in 1990, and he suffers from aphakia in both eyes.[3] (*Id.* at 470, 473.)

Dr. Lubahn's diagnostic impressions were congenital cataracts status post-crystal lens extraction and "eventual aphakic glaucoma," with a right eye trabeculectomy at the age of ten. (*Id.* at 473.) Dr. Lubahn noted that Plaintiff suffers from "moderately poor [visual acuity],

---

[3] Dr. Lubahn uses the acronyms "OU," "OS"," and "OD." (Tr. 470.) "In eye examination terms, OU represents both eyes (oculus uterque); OS represents the left eye (oculus sinister); and OD represents the right eye (oculus dexter)." *Kevin D.E. v. Saul*, No. 19-cv-00517, 2021 WL 1202331, at *3 n.1 (N.D. Okla. Mar. 30, 2021) (simplified). Relatedly, a "trabeculectomy is a glaucoma surgery that relieves pressure buildup inside the eye by creating a new way for fluid from the anterior chamber to drain," *Arnwine v. Collins*, No. 25-2571, 2026 WL 1506433, at *1 n.3 (Vet. App. May 29, 2026) (simplified), and aphakia is the "[a]bsence of the lens of the eye[,]" which "may occur congenitally or from trauma, but is most commonly caused by extraction of a cataract." *Torres v. Sec'y of Health & Hum. Servs.*, 870 F.2d 742, 743 n.1 (1st Cir. 1989) (citation omitted).

nystagmus, and optic atrophy secondary to glaucoma."[4] (*Id.*) Plaintiff was "able to navigat[e] the halls without assistance, but this required lots of direct sighting and a slow pace (due to his poor peripheral vision)." (*Id.*) Further, Plaintiff proceeded "slow[ly]" but was "able to complete forms, paperwork, and sign today," there were "no observed problems sitting, standing, talking, listening, or handling objects," and "any tasks requiring vision will be very difficult" because of Plaintiff's "severe visual impairment." (*Id.*) (simplified).

**2. The ALJ's Decision**

The ALJ found Dr. Lubahn's opinion unpersuasive. (*Id.* at 630.) The ALJ explained that Dr. Lubahn's opinion was "partially consistent" with his findings but not with the "record available at the time" of the ALJ's decision and the opinion included no "functional limitations." (*Id.*) The ALJ added that Dr. Lubahn's opinion that Plaintiff would find visual tasks "very difficult" was overly vague. (*Id.*)

The ALJ provided examples of evidence that conflicted with Dr. Lubahn's opinion. (*Id.*) The ALJ's examples included other medical providers' observations that Plaintiff's "corrected visual acuity was relatively stable at between 20/60 to 20/70 in either eye," Plaintiff "admitted his symptoms were generally stable," Plaintiff's "migraine headaches resolved with over-the-counter medication," and Plaintiff's "diagnostic testing revealed relatively stable visual fields and no evidence of disease progression." (*Id.*, citing Ex. 2F at 1-8, Ex. 3F at 1-8, Ex. 4F at 1-8, Ex. 6F at 1-17, Ex. 7F at 17-26, Ex. 11F at 1-12, Ex. 12F at 2-4, and Ex. 16F at 19, 40, 63-64, 81, i.e., Tr. 278-85, 296-303, 314-21, 332-48, 362-71, 478-89, 492-94, 529, 550, 573-74, 591;

---

[4] Nystagmus causes "repetitive, uncontrolled movements, which often result in reduced vision and depth perception and can affect balance and coordination." *Mueller v. Hartford Life & Accident Ins. Co.*, No. 3:22-cv-01132-SB, 2023 WL 8936088, at *4 n.5 (D. Or. Dec. 4, 2023) (simplified), *findings and recommendation adopted*, 2023 WL 8935353, at *1 (D. Or. Dec. 27, 2023).

*see also* Ct. Tr. Index at 4, ECF No. 8-1, noting that Exhibit 6F spans fourteen, not seventeen, pages).

The ALJ's examples also included that Plaintiff "did not use an assistive device for navigating about and was able to assist his father in cutting wood with a chainsaw." (*Id.* at 630, citing Ex. 2F at 1-2, Ex. 7F at 25-26, Ex. 8F at 3, 6, and Ex. 12F at 2-4, i.e., Tr. 278-79, 370-71, 470, 473, 492-94.) The ALJ's remaining examples were Dr. Lubahn's observations that Plaintiff "navigate[d] the halls without assistance using direct sighting and a slow pace," "slowly complete[d] and sign[ed] forms and paperwork," and "admitted to using public transportation and not using any assistive devices to navigate around." (*Id.*, citing Ex. 8F at 3, 6, i.e., Tr. 470, 473.)

**3. Disposition**

The Court finds that substantial evidence supports the ALJ's discounting of Dr. Lubahn's opinion.

It is important to consider at the outset that "the threshold for [substantial] evidentiary sufficiency is not high." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek*, 587 U.S. at 103); *cf.* *Chen v. Bisignano*, No. 25-3588, 2026 WL 1427028, at *1-2 (9th Cir. May 21, 2026) ("Substantial evidence requires 'more than a mere scintilla' of evidence but does not require more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' when considering the entire record.") (citation omitted).

This is significant because "[u]nder the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence.'" *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32

F.4th at 792). To do so, the "ALJ 'must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source[] and explain how [she] considered the supportability and consistency factors in reaching these findings.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792). Consistency concerns the extent to which a "medical opinion is consistent with the evidence from other medical and nonmedical sources," *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792), and "[s]upportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen*, 82 F.4th at 740 ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence.") (simplified).

In this case, the ALJ did not err in evaluating Dr. Lubahn's medical opinion because she "provided specific, cogent reasons related to the lack of 'consistency' and 'supportability' of the rejected evidence." *Phillips v. Bisignano*, No. 24-6711, 2025 WL 3090746, at *1 (9th Cir. Nov. 5, 2025) (first quoting 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b); and then citing *Woods*, 32 F.4th at 791-92). In evaluating a medical opinion under the revised regulations, an ALJ is entitled to consider whether a medical opinion conflicts with the claimant's reported activities. In *Phillips*, for example, the ALJ did exactly that. Specifically, the ALJ discounted the physical limitations that a medical provider identified, explaining that such limitations conflicted with the claimant's "demonstrated activities," such as performing "yard work" and "exercising at the gym." *Id.*

The situation here is like the one presented in *Phillips*. The ALJ focused on Dr. Lubahn's principal opinion that because of Plaintiff's "severe visual impairment," he will find "tasks requiring vision . . . very difficult[.]" (Tr. 630, citing Ex. 8F at 6, i.e., Tr. 473.) As discussed, the

ALJ declined fully to credit this opinion, in part because it conflicted with evidence that was "available at the time" of the ALJ's decision. (*Id.*) The ALJ explained that this evidence included reports that Plaintiff was able to "assist his father in cutting wood with a chainsaw" and use public transportation and did not require an "assistive device for navigati[on.]" (*Id.*, citing Ex. 2F at 1-2, Ex. 7F at 25-26, Ex. 8F at 3, 6, and Ex. 12F at 2-4, i.e., Tr. 278-79, 370-71, 470, 473, 492-94.)

Notably, the ALJ cited record evidence demonstrating that on January 8, 2018, one week before the alleged disability onset date, Plaintiff visited his ophthalmologist, John Wilkins, M.D. ("Dr. Wilkins"), complaining of a foreign body-like (i.e., "fb") sensation in his left eye and a "very sore . . . tear duct." (*Id.* at 278, 619, 648.) Plaintiff reported that he "had been cutting wood with [a] chainsaw [the] last couple days" and "experienced" the "[a]ggravation" around this time. (*See id.* at 278, "[Thirty-seven-year-old] male complains of [what] feels like a fb in [his] left eye. The timing is described as [three] days. Relief is experienced from [drops in his left eye] every day. . . . Aggravation is experienced from [sic] had been cutting wood with chainsaw last couple days.").

By comparison, after completing his consultative exam on August 25, 2020, Dr. Lubahn noted that Plaintiff did "not use assistive device such as a cane to navigate" and often "take[s] public transportation." (*Id.* at 470.) Dr. Lubahn, however, also noted that Plaintiff reported "bumping into furniture at home and difficulty doing housework activities" and presented with an impaired ability to "navigate the halls without assistance" and "required lots of direct sighting and a slow pace" because of his "poor peripheral vision[.]" (*Id.* at 470, 473; *cf. id.* at 624-25, 630, discounting Dr. Lubahn's opinion and Plaintiff's symptom testimony based in part on this evidence).

About one year later, Plaintiff testified at the initial hearing before the first ALJ. (*See id.* at 31-58, 825-52, attaching duplicate transcripts from the initial hearing held on August 11, 2021). During this hearing, Plaintiff provided the following testimony about his reported use of a chainsaw:

> Q. . . . The beginning of 2018, there was a reference to you cutting wood with a chainsaw. Were you using a chainsaw in the beginning of 2018.
>
> A. No. I wasn't using a chainsaw. My dad was [using a chainsaw]. And I went outside to take a walk, and I was over by the chainsaw, but I was not operating the chainsaw. No. No. I have not operated a chainsaw. I think that's what they're referring to.
>
> Q. Okay. And are there any things that you do to help out around the house?
>
> A. No, there's nothing I really do. I get help with doing everything.

(*Id.* at 48, 842.)

Plaintiff argues that the ALJ committed reversible error in discounting Dr. Lubahn's opinion because during the initial hearing, he informed the first ALJ that he "never used a chainsaw to cut wood" and merely stood "nearby while his father did so." (Pl.'s Opening Br. at 8, citing Tr. 48.) The problem for Plaintiff is that while he offers a different interpretation of the record evidence, which tends to reconcile his reporting, he fails adequately to explain why an alternative interpretation of the record evidence demonstrates that the new ALJ committed reversible error.

In *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *1 (9th Cir. Nov. 7, 2024), a claimant similarly "offer[ed] a different interpretation of the medical records relating to her improvement with treatment and point[ed] to other mental status examinations that tend[ed] to corroborate her testimony." *Id.* The Ninth Circuit affirmed the ALJ's denial of benefits, emphasizing that "simply offering an alternative interpretation of the record does not demonstrate [an] ALJ committed reversible error." *Id.* (first citing *Smartt v. Kijakazi*, 53 F.4th

489, 494 (9th Cir. 2022); and then citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)).

So too here. Plaintiff's interpretation differs from the new ALJ's finding that Dr. Lubahn's opinion conflicted with reports suggesting that in addition to being able to navigate without an assistive device and use public transportation, Plaintiff spent several days cutting wood with a chainsaw. (*See* Pl.'s Opening Br. at 8-9, citing Tr. 630.) Although Plaintiff disputes the import or "characterization" of these reports, the ALJ's "different rational interpretation is not error." *Thomas v. Bisignano*, No. 24-5005, 2025 WL 2452375, at *1 (9th Cir. Aug. 26, 2025) (explaining that the claimant "dispute[d] the characterization of his activities, [but] an ALJ's different rational interpretation is not error" (citing *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005))).

Finally, the Court notes that the ALJ found persuasive the opinion of the consultative optometrist, Linda Medeski, O.D. ("Dr. Medeski"), relying in part on Plaintiff's reported ability to "help his father cut wood with a chainsaw." (Tr. 630-31; *see also id.* at 327, "A Humphrey's visual field [analyzer] was performed twice in each eye. Testing is invalid due to excessive fixation losses or high false negative errors. OD [visual field index was] 88%. Scattered defect noted. OS [visual field index was] 67%. Possible nasal step defect. . . . No statement can be made regarding work abilities with this test alone."). Plaintiff does not challenge the ALJ's evaluation of Dr. Medeski's opinion on appeal. (*See* Pl.'s Opening Br. at 3-4, 9, describing and citing Dr. Medeski's opinion in support of an assignment of error). This only bolsters the conclusion that Plaintiff demonstrated no harmful error. *See Vonovich v. Bisgnano*, No. 24-3920, 2026 WL 1534398, at *1 (9th Cir. June 1, 2026) ("[Because the claimant] did not raise the[se challenges] before the district court, he has forfeited them. . . . Even if [the claimant had] preserved a

challenge to the ALJ's determination of his [RFC or] . . . finding at step five by challenging the related issue about the rejection of [the physician's] opinion, those additional challenges would fail in light of our conclusion that the ALJ reasonably found [the physician's] opinion to be unpersuasive." (citing *Smartt*, 53 F.4th at 500)); *Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025) ("Because [the claimant] failed to acknowledge these additional reasons, and therefore also failed to challenge the ALJ's reliance on them, the Commissioner was correct to assert that [the claimant] forfeited the argument that the ALJ did not provide sufficient reasons for discounting the opinions of the [relevant] healthcare professionals." (citing *Carmickle*, 533 F.3d at 1161 n.2)).

In sum, the ALJ did not err in discounting Dr. Lubahn's opinion based on Plaintiff's reported engagement in the above-described activities. *See Smartt*, 53 F.4th at 494 ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.") (citation omitted); *see also Chen*, 2026 WL 1427028, at *2 (noting that the ALJ discounted a physician's opinion in part because it "conflicted with [the claimant's] own demonstrated abilities" and holding that the ALJ's rationale had the "power convince" (quoting *Smartt*, 53 F.4th at 499)).

The ALJ also found Dr. Lubahn's opinion unpersuasive because it was "vague" and did not "provide any functional limitations." (Tr. 630.) The Ninth Circuit case law described below supports that these supportability findings are sufficient to discount a physician's opinion.

In *Chen*, the Ninth Circuit began by explaining that "[w]hile an ALJ must evaluate the persuasiveness of medical opinions, an ALJ may disregard vague or unsupported opinions and support his own analysis with substantial evidence." 2026 WL 1427028, at *2 (citing *Woods*, 32 F.4th at 792). The Ninth Circuit also explained that the ALJ appropriately discounted the

claimant's physician's opinion, in part because it lacked any "specific functional limitations." *Id.* (citing *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)). The claimant's physician, for example, "did not explain with specificity how frequently [certain] difficulties would occur" nor "specify their effect on [the claimant's] ability to perform unskilled work[.]" *Id.* Thus, the ALJ provided a rationale that had the "power to convince." *Id.* (simplified); *see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("The ALJ determined [the physician] did not provide useful statements regarding the degree of [the claimant's] limitations. Here, the ALJ found that [the physician's] descriptions of [the claimant's] ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify [the claimant's] functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC.").

Attempting to distinguish his case, Plaintiff argues that the ALJ erred in discounting Dr. Lubahn's opinion because Dr. Medeski similarly failed to "provide any specific functional limitations" and the state agency consultants used terms like "limited" and only made findings like "should avoid concentrated exposure to hazards." (Pl.'s Opening Br. at 9, first citing portable document format page 335, i.e., Tr. 327; and then citing Tr. 66-67, 81-82.)

Plaintiff fails to address Dr. Medeski's opinion, in particular her opinion that Plaintiff's "[t]esting [was] invalid due to excessive fixation losses or high false negative errors." (Tr. 327; *see also id.* at 625, reflecting that the ALJ's subjective symptom analysis cited Plaintiff's invalid test results). Plaintiff also fails to recognize that the state agency consultants' environmental limitations (i.e., Plaintiff should avoid concentrated exposure to workplace hazards like moving machinery and unprotected heights) were specific functional limitations that they based on their

opinions that Plaintiff suffers from "moderately" impaired visual fields in both eyes. (*Id.* at 67, 82.)

Also noteworthy is that the state agency consultants incorporated their environmental limitations and findings into their "final comments" by reference. In their final comments, the consultants explained why Plaintiff suffered from visual limitations—namely, "[l]imited" near and far acuity, accommodation, and field of vision. (*See id.* at 66-68, 81-83, explaining that Plaintiff's "visual acuities have remained essentially stable" and directing readers to "[s]ee final comments," where the consultants explained that Plaintiff's "visual impairments based on his best testing performances were only moderately severe" and he "may be capable of better visual function if fitted with aphakic contact lenses," as opposed to being "highly dependent on full-time use of strong optical corrections," i.e., "[a]phakic spectacles [that] typically limit peripheral vision").

Further, Plaintiff fails adequately to address the opinion of Dr. Boone, an ophthalmologist who served as an impartial medical expert and testified at the second administrative hearing. Unlike Dr. Lubahn, the ALJ found Dr. Boone's opinion "partially persuasive." (*See id.* at 629-30, 643-45, 650-60, 964-69, finding "partially persuasive" and unpersuasive Drs. Boone and Lubahn's opinions and showing that at the second hearing, Dr. Boone provided a detailed breakdown of the objective evidence and "ascribe[d] no visual limitation to [Plaintiff from] October 30, 2009 through May 17, 2019"). Plaintiff argues that Dr. Boone's opinion was "vague" and "ambiguous" and suggests that the ALJ, who questioned Dr. Boone before Plaintiff's counsel, should have asked Dr. Boone to clarify his opinions. (*See* Pl.'s Opening at 5-6, 9, 13, citing Tr. 651, 657-58, 660; *cf.* Tr. 659-60 "[Counsel:] Doctor, the only question I have is secondary to the diagnosis. Could a person experience headache symptoms? [Dr. Boone:] Well,

[Plaintiff] has glaucoma, so when the pressure is very high, they could certainly have headache symptoms, yes. [Counsel:] Okay. That's all I have, Judge. ALJ: All right, very good. Thank you, Doctor. I appreciate your thorough analysis. We'll let you go. I hope you have a very nice rest of the day.").

Plaintiff received an opportunity to seek any clarification that he deemed necessary. It is also well settled that "[a]n 'ALJ is responsible for translating and incorporating [medical] findings into a succinct RFC.'" *Martinez v. Bisignano*, No. 24-4520, 2025 WL 2364595, at *1 (9th Cir. Aug. 14, 2025) (quoting *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)). Plaintiff fails to demonstrate that the ALJ harmfully erred in discharging her responsibility to translate and incorporate the consulting medical providers' findings into a succinct RFC. *See Floe v. O'Malley*, No. 23-35589, 2024 WL 4601594, at *1 (9th Cir. Oct. 29, 2024) ("The ALJ found each medical opinion persuasive and appropriately translated the assessments of [the claimant's] moderate mental impairments into the [RFC.]" (citing *Rounds*, 807 F.3d at 1006)).

For these reasons, the Court concludes that substantial evidence supports the ALJ's discounting of Dr. Lubahn's opinion.

## II. PLAINTIFF'S TESTIMONY

### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

**B. Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 625, reflecting that the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

**1. Gaps in Treatment**

The ALJ discounted Plaintiff's testimony regarding the frequency and severity of his headache symptoms because of a significant gap in his treatment history. (Tr. 624.) The ALJ noted that on December 10, 2024, she held the second hearing at which Plaintiff testified that he suffered from daily headaches—which last three to four hours, occasionally occur multiple times per day, and require him to rest an average of sixteen to eighteen hours per day—since the initial administrative hearing held on August 11, 2021. (*Id.*, addressing *id.* at 660-66.) The ALJ concluded that Plaintiff's reported headache frequency and severity conflicted with a significant gap in his treatment:

> If [Plaintiff] . . . was experiencing headaches every single day lasting at least [three to four] hours that caused him to have to rest for [an average of sixteen to eighteen] hours per day, one would expect [him] . . . to follow up with his provider and seek a new treatment plan. In contrast with th[is] testimony, in March 2021, [Plaintiff] . . . readily admitted that his last migraine [took place]

> several months [earlier]. . . . He was not seen thereafter for migraines until June 2023, when [he] . . . reported that he gets migraines every couple of weeks, but that his medications work well.

(*Id.*, citing Ex. 18F at 7, 25, i.e., Tr. 945, 963; *id.* at 625-27, highlighting Plaintiff's reports of effective over-the-counter medication, improvement, unchanged symptoms, going several months without a migraine, and bi-weekly migraines in June 2023 but no "further mention of migraines").

A significant gap in treatment is a clear and convincing reason to discount a claimant's testimony. In *Wood v. Busignano*, No. 24-6838, 2025 WL 3527450, at *2 (9th Cir. Dec. 9, 2025), for example, the Ninth Circuit explained that because "the ALJ did not find evidence of malingering and determined that objective medical evidence established an impairment that could produce the symptoms of which the claimant complained, the ALJ [needed to] offer clear and convincing reasons for rejecting the claimant's testimony." *Id.* (citing *Smartt*, 53 F.4th at 497). The Ninth Circuit held that the ALJ did just that and thus "did not improperly discount [the claimant's] testimony." *Id.* In support of this holding, the Ninth Circuit explained, among other things, that the ALJ "identified inconsistencies between [the claimant's] testimony and the medical evidence in the record" and "observed that there were significant gaps in treatment and an improvement in [the claimant's] mental health" and that "[t]hese reasons [were] sufficiently clear and convincing." *Id.* (citing *Smartt*, 53 F.4th at 497-501); *see also Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020) ("The ALJ also pointed to [the claimant's] improvement during treatment and lengthy gaps in treatment that suggest his mental impairments were not as limiting as he testified. Accordingly, the ALJ's decision to discount [the claimant's] testimony was not unreasonable.").

Plaintiff acknowledges that the ALJ relied on his unremarkable history of migraine treatment, which the ALJ found inconsistent with his testimony at the second hearing. (*See* Pl.'s

Opening Br. at 13-15 & Pl.'s Reply Br. at 5-7, focusing on purported deficiencies in the June 2023 record upon which the ALJ relied and claiming that the ALJ's RFC did not include "any limitations related to [his] migraines"). Contrary to Plaintiff's argument, the ALJ's RFC limitations account for his migraines. (*See* Tr. 628, 631, stating that the visual limitations avoid "an aggravation or exacerbation in [Plaintiff's] migraines because of the increased strain on [his] eyes"). Further, Plaintiff fails to address his significant gap in treatment during the relevant period.

For these reasons, the Court finds that the ALJ's interpretation of the record was rational. (*See supra*; *cf. id.* at 620, 963, March 17, 2021, three years after the alleged onset of disability and two weeks before the date last insured, Plaintiff reported that he "developed a migraine" the previous day and "still fe[lt] a mild migraine" the next day, but "[h]is last migraine was several months ago" and he is "normally able to manage it with over-the-counter migraine Excedrin"; *id.* at 945, June 12, 2023, Plaintiff reported "[g]etting migraines every couple of weeks" but his "[m]ed[ication] work[ed] well"; *id.* at 661, December 10, 2024, daily migraines necessitate Plaintiff's use of a prescription "suppository"). Thus, the Court must uphold the ALJ's reliance on Plaintiff's significant gap in treatment. *See Ford*, 950 F.3d at 1154 ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (simplified); *see also Cody v. Bisignano*, No. 25-3837, 2026 WL 1470573, at *2 (9th Cir. May 26, 2026) (holding that the ALJ satisfied the clear and convincing reason standard and noting that the ALJ "discounted [the claimant's] testimony in part because the record indicated that [he] sought minimal treatment"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (explaining that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") (simplified).

### 2. Effective Treatment

The ALJ also discounted Plaintiff's testimony because he reported that over-the-medication typically proved effective in controlling his migraine symptoms. (*See* Tr. 625-26, citing Plaintiff's March 2021 migraine admissions and emphasizing that "despite complaining of an ocular migraine with some associated nausea and vomiting during his March [2021] primary care examination, he otherwise had no significant physical abnormalities and admitted that his last migraine was several months prior, that his headache had improved, and that he was usually able to manage his migraines with over-the-counter medications" (first citing Ex. 18F at 7, 25, i.e., Tr. 963 or Tr. 574; and then citing Ex. 16F at 19, 40, 63-64, 81, i.e., Tr. 529, 550, 573-74, 591.)

"[E]vidence of medical treatment successfully relieving [a claimant's] symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (providing when a claimant's "[i]mpairments that can be controlled effectively with [treatment, they] are not disabling for the purpose of determining eligibility for SSI benefits") (simplified). In evaluating whether an ALJ erred in discounting a claimant's testimony on this ground, the question is whether the ALJ's rationale is "clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

The ALJ's rationale was clear enough to have the power to convince. Plaintiff fails to address that three years after the alleged onset of disability and two weeks before the date last insured, he admitted that he had not experienced a migraine for several months and could "normally . . . manage [them] with over-the-counter migraine Excedrin[.]" (*See* Tr. 620, 963, March 17, 2021, Plaintiff reported that he went "several months" without a migraine and he is "normally able to manage it with over-the-counter migraine Excedrin"; *id.* at 573, March 17,

2021, Plaintiff complained of congestion, vomiting, and feeling "[f]oggy minded" and sensitive to light, reported improvement in an "[o]phthalmoplegic migraine" that was "not intractable," and requested a "prescription for Imitrex . . . for future purposes," and Plaintiff's treating provider suspected "[p]ossible viral illness" and "recommend[ed] Covid testing").

Plaintiff places considerable emphasis on the absence of explanations about what it means that his medication was "working well" and "how long it takes for [his] medication to take effect before he can resume activity." (*See* Pl.'s Reply Br. at 6, accepting Plaintiff's testimony from the second hearing and similar reports and arguing that the "majority of [Plaintiff's] migraines" are "not responsive to the medications [that] treat typical migraines," there is "nothing he can do when he has a migraine other than lie down in a dark room," and even if his medications were occasionally effective, he "still would be off task or absent from work" far too often). Plaintiff fails to address that his reports on the effectiveness of over-the-counter medication cast serious doubt on the frequency, duration, and severity of the migraine symptoms that he described at the second hearing. That alone supports discounting his symptom testimony.

Given these facts and authorities, the Court finds that the ALJ appropriately discounted Plaintiff's testimony because over-the-counter medication effectively controlled his migraines. *See Floe*, 2024 WL 4601594, at *1 (holding that the ALJ "properly noted that [the claimant's] symptoms improved with medication and treatment, concluding that such evidence undermined [the claimant's] statements about the severity of his impairments" (citing *Wellington*, 878 F.3d at 876)).

### 3. Reported Activities and Conflicting Medical Evidence

In addition to treatment gaps and effective medication, the ALJ also discounted Plaintiff's testimony based on his reported activities and conflicting "objective medical findings." (Tr. 625.)

The ALJ explained that Plaintiff's "activity level" was "modest" but some reported activities undermined the severity of his alleged symptoms and she did not rely "solely" on such activities and instead considered them in "combination [with] the objective medical findings." (*Id.*)

"[A]n ALJ may not discount a claimant's subjective symptom testimony by relying solely on the absence of corroborating objective medical evidence." *Burke v. Bisignano*, No. 24-5863, 2025 WL 3764054, at *1 (9th Cir. Dec. 30, 2025) (citing *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024)). An ALJ, however, may discount a claimant's symptom testimony based in part on an inconsistency between his claimed limitations and reported activities. In *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014), the Ninth Circuit confirmed as much, noting that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide[d] a valid reason for an adverse credibility determination." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *see also Ghanim*, 763 F.3d at 1165 (stating that a claimant's engagement in activities that are "incompatible with the severity of symptoms alleged can support an adverse credibility determination" (first citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); and then citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004))).

As discussed, the ALJ offered a reasonable interpretation of the record regarding Plaintiff's use of a chainsaw and public transportation and navigation without an assistive device. The ALJ also reasonably resolved conflicts in the medical opinion evidence, most of which Plaintiff does not challenge on appeal. *See Slayton v. O'Malley*, No. 22-16883, 2024 WL 637482, at *1 (9th Cir. Feb. 15, 2024) ("The ALJ 'is charged with determining credibility and resolving [any] conflict[s]' between medical evidence." (quoting *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012))).

Accordingly, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *2 (9th Cir. Nov. 12, 2025) ("Because the ALJ's rationale is clear enough that it has the power to convince, the ALJ's citation of [conflicting] medical records and daily activities provided sufficiently specific, clear, and convincing reasons for discounting her subjective testimony regarding [her allegedly debilitating] impairments.") (simplified).

**CONCLUSION**

For the reasons stated, Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 24th day of August, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge